UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Pollyanna Burns, Rhonda Tomoson, and Diane Gooding, | Civil No. 21-638 (DWF/HB) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Service Employees International Union Local 284 and Independent School District 191. | |
| Defendants. | |

Douglas P. Seaton, Esq., and James V.F. Dickey, Esq., Upper Midwest Law Center, counsel for Plaintiffs.

Brendan D. Cummins, Esq., Cummins & Cummins, LLP, and Patrick C. Pitts, Esq., and Scott A. Kronland, Esq., Altshuler Berzon LLP, counsel for Service Employees International, Local 284.

Kari Marie Dahlin, Esq., and Sally J. Ferguson, Arthur Chapman Kettering Smetak & Pikala, P.A., counsel for Independent School District 191.

INTRODUCTION

This matter is before the Court on Defendants Service Employees International Union, Local 284's ("Local 284") and Independent School District 191's ("ISD 191") (together, "Defendants") Motion to Dismiss (Doc. No. 16). For the reasons set forth below, the Court grants Defendants' Motion.

BACKGROUND

Plaintiffs Pollyanna Burns, Rhonda Tomoson, and Diane Gooding ("Plaintiffs") are food-service managers employed by ISD 191 in a bargaining unit represented by

Local 284.  (Doc. No. 1 ("Compl.") ¶¶ 12, 17, 23; Doc. No. 19 ("Gibbons Decl." ¶¶ 6, 8, 10).[1]  Burns and Tomoson both joined Local 284 in August 2015, and Gooding joined in January 2019.  (*Id*. ¶¶ 12, 17, 23).)  Each plaintiff executed an agreement with Local 284, in which they requested membership with Local 284 and authorized Local 284 to represent them in collective bargaining.  (*See* Gibbons Decl. ¶¶ 6, 8, 10, Exs. A, B ("I request membership with and authorize [Local 284] to represent me for the purpose of collective bargaining with my employer . . ."); Ex. C ("I hereby request and voluntarily accept membership in [Local 284] . . . [and] authorize [Local 284] to act as my exclusive representative in collective bargaining over wages, benefits, and other terms and conditions of employment[.]").  In addition, Plaintiffs agreed to pay their union membership dues via payroll deduction ("check-off authorization").  The agreements signed by Burns and Tomoson stated:

> I hereby request and voluntarily authorize my employer to deduct from my wages my initiation fee and an amount equal to the regular monthly dues uniformly applicable to members of [Local 284] or monthly service fee, and further that such amount so deducted be sent to such Local Union for and on my behalf.  This authorization shall remain in effect and shall be irrevocable unless I revoke it by sending written notice to both my employer and the Local Union during the period not less than thirty (30) and not more than forty-five (45) days before the annual anniversary date of this authorization or the date of termination of the applicable contract between my employer and the Local Union, whichever occurs sooner.  This authorization shall be automatically renewed as an irrevocable check-off from year to year unless I revoke it in writing during the above-described window period, irrespective of my membership in the Union.

---

[1]  Defendants submit copies of Plaintiffs' respective agreements with Local 284.  Plaintiffs' Complaint references and quotes from these agreements.  (Compl. ¶¶ 13, 18, 24.)  Therefore, they are properly considered.  See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

2

(Gibbons Decl. ¶¶ 6, 8, Exs. A, B; *see also* Compl. ¶¶ 13, 18, 29.)  The language in Gooding's agreement contains similar provisions:

> I recognize the need for a strong union and believe everyone represented by our union should pay their fair share to support our union's activities.  I hereby request and voluntarily authorize my employer to deduct from my earnings and to pay over to [Local 284] an amount equal to the regular monthly dues uniformly applicable to members of [Local 284].  This authorization shall remain in effect and shall be irrevocable unless I revoke it by sending written notice via U.S. mail to both the employer and [Local 284] during the period not less than thirty (30) days and not more than forty-five (45) days before the annual anniversary date of this agreement or the date of termination of the applicable contract between the employer and [Local 284] whichever occurs sooner.  This authorization shall be automatically renewed as an irrevocable check-off from year to year unless I revoke it in writing during the window period, even if I have resigned my membership in [Local 284].

(Gibbons Decl. ¶ 10, Ex. C; *see also* Compl. ¶¶ 24, 30.)

On March 5, 2020, Plaintiffs notified Local 284 that they terminated their membership and demanded the stoppage of dues deductions.  (Compl. ¶¶ 15, 20, 25.)  Because Plaintiffs' notifications fell outside of the termination periods specified in the authorizations in their respective agreements, amounts equal to the regular monthly dues continued to be deducted from their pay and transmitted to Local 284 for a period following their resignations.  (Compl. ¶¶ 16, 21, 27; Gibbons Decl. ¶ 13.)  Burns' and Tomoson's deductions continued through July 2020, and Gooding's continued through December 2020.  (*Id.*)  These dates corresponded with the "anniversary date" of their respective agreements.

Plaintiffs filed the present action on March 5, 2021.  In Counts One and Two, Plaintiffs submit that the deductions from their paychecks pursuant to the terms of their

3

dues deduction authorization agreements, both before and after they resigned from Local 284, violate the First Amendment and 42 U.S.C. §1983. (Compl. ¶¶ 39-54.) In Counts Three through Seven, Plaintiffs assert state-law claims for conversion, money had and received/unjust enrichment, civil theft, tortious interference with contractual relations, and unlawful wage deductions. (*Id.* ¶¶ 55-78.) Defendants move to dismiss Plaintiffs' federal claims with prejudice and ask the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

## DISCUSSION

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### A. Federal Claims

In Counts One and Two, Plaintiffs allege that Defendants violated the First Amendment by taking deductions from Plaintiffs' pay both before and after their resignations from Local 284. (Compl. ¶¶ 39-54.) Defendants move to dismiss these claims, arguing that the dues were deducted based on Plaintiffs' dues checkoff agreements with Local 284 and, therefore, do not violate the First Amendment.[2]

Under the Minnesota Public Employee Labor Relations Act ("PERLA"), Minn. Stat. §§ 179A.01, *et seq.*, public-school employees may vote to form a union for purposes of collective bargaining. Employees are not required to join the union, and Minnesota law requires unions to represent fairly the interests of all bargaining unit members regardless of membership status. § 179A.06, subd. 2. PERLA authorized public employers and unions to enter into collective-bargaining agreements that require all represented employees to pay their proportionate share of the costs of representation regardless of union membership (referred to as a "fair-share" or "agency" fee). *Id*.

---

[2] Defendants submit that because Counts One and Two fail to state a claim, the Court need not consider other potentially dispositive issues on which Defendants preserve their position. The Court agrees.

5

§ 179A.06, subd. 3. Until 2018, it was constitutionally permissible to charge non-union members such fair-share or agency fees. *See Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 235-36 (1997) (allowing non-union members to be charged for the portion of union dues attributable to activities that are germane to collective bargaining activities). In 2018, the Supreme Court of the United States overruled *Abood*. *See Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018).[3] In *Janus*, the Supreme Court held that requiring non-union members to pay union fees as a condition of public employment violates the First Amendment. *Id*. at 2464, 2486 ("Because the *compelled* subsidization of private speech seriously impinges on First Amendment rights, it cannot be casually allowed."; "States and public-sector unions may no longer extract agency fees from *nonconsenting* employees.") (emphasis added). The Supreme Court stated:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed.

*Id*. at 2486.

Plaintiffs rely on *Janus* in arguing that Defendants have violated their First Amendment rights and, in particular, that *Janus* applies to full-dues-paying union

---

[3] The PERLA provision allowing "fair-share" fees has not been amended after the Janus decision.

members.[4]  However, the decision in *Janus* does not address the collection of union dues from union members and, instead, relates to union-related deductions from a "nonmember's wages."  See *Janus*, 138 S. Ct. at 2485 & 2485 n.27 ("States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions.").  Court have routinely recognized that *Janus* does not extend to the collection of union dues from union members.  *See, e.g.*, *Belgau v. Inslee*, 975 F.3d 940, 951 (9th Cir. 2020) ("*Janus* does not address the financial burden of union membership. . . . We join the swelling chorus of courts recognizing that *Janus* does not extend a First Amendment right to avoid paying union dues.") (citing cases); *Bennett v. Council 31 of AFSCME*, 991 F.3d 724, 732 (7th Cir. 2021) ("*Janus* said nothing about union members who . . . freely chose to join a union and voluntarily authorized the deduction of union dues and who thus consented to subsidizing a union."); *Hoekman v. Educ. Minn.*, --F.Supp.3d--, Civ. No 18-1686, 2021 WL 533683, at *8 (D. Minn. Feb. 12, 2021) ("*Janus* did not address a union member's First Amendment rights."); *Loescher v. Minn. Teamsters Public & Law Enf't Union, Local No. 230*, 441 F. Supp. 3d 762, 773 (D. Minn. Feb. 26, 2020) (same) (citing cases).

Here, the allegations in the Complaint clearly demonstrate that Plaintiffs were members of Local 284 and that they authorized monthly dues deductions.  (Compl. ¶¶ 13, 18, 24.)  Further, the operative agreements provided that the dues authorizations would

---

[4]   Plaintiffs argue that the phrase "nor any other payment to the union" must refer to any other payment different from an agency-fee payment, which includes membership dues and, thus, "Janus' proscription on compelled speech . . . includes full dues payments made to a public sector union."  (See Doc. No. 23 at 8.)

7

remain in effect unless revoked by written notice during a specific time period, and that the authorizations would automatically renew from year to year unless so revoked irrespective of membership in Local 284.  During Plaintiffs' membership, Local 284 deducted union dues from Plaintiffs' paychecks in accordance with the authorizations. Based on these allegations in the Complaint, which show that Plaintiffs joined the union and voluntarily agreed to dues deductions, Plaintiffs did not experience compulsion that might violate the First Amendment and the deductions did not violate their First Amendment rights.  *See, e.g.*, *Belgau*, 975 F.3d at 950 ("Employees, who are union members, experienced no such compulsion."); *Bennett*, 991 F.3d at 732 (explaining that *Janus* does not apply to union members who freely chose to join a union and voluntarily authorized the deduction of union dues); *Durst v. Or. Educ. Ass'n*, 450 F. Supp. 3d 1085, 1090 (D. Or. 2020) (explaining that *Janus* is not applicable to employees who voluntarily joined their unions and signed authorization agreements). Thus, the *Janus* holding does not prohibit the dues collections from their wages and Plaintiffs' reliance on *Janus* does not establish a claim to relief.

Plaintiffs also claim that the dues checkoff agreements were not freely given waivers of their First Amendment rights because Plaintiffs were not offered a real choice and after *Janus*, Defendants failed to meaningfully inform Plaintiffs of their rights. Specifically, Plaintiffs argue that Burns and Tomoson were given the false choice to either pay full dues to join Local 284 or to not join and still pay a percentage of the dues or lose their jobs.  Plaintiffs also submit that Gooding's dues checkoff agreement failed to notify her of her rights under *Janus*.  In essence, Plaintiffs allege that they were coerced

8

into joining Local 284 and that Defendants have not provided clear and convincing evidence of a freely given waiver. The Court respectfully rejects these arguments. First, the Court notes that even before *Janus*, Plaintiffs Burns and Tomoson had the option not to join the union. And while the amount paid by nonmembers now is different than when Burns and Tomoson joined Local 284, that difference does not negate the fact that they agreed to join Local 284 and authorized the dues deductions. *See, e.g.*, *Belgau*, 975 F.3d at 950 ("That Employees had the option of paying less as agency fees pre-*Janus*, or that *Janus* made that lesser amount zero by invalidating agency fees, does not establish coercion."); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 960 (10th Cir. 2021) ("[Plaintiff] was free to join the Union or not. Regretting a prior decision to join the Union does not render a knowing and voluntary choice to join nonconsensual."); *Loescher*, 441 F.Supp.3d at 774 (explaining that the choice to join a union in lieu of paying an agency fee required under Minnesota's law before *Janus* "was a calculated decision, not the result of a lack of free will"). The Court agrees with these decisions rejecting the argument that pre-*Janus* checkoffs were not voluntary agreements.

Plaintiffs also object to the continued deduction of dues after they notified Defendants that they wanted to terminate their membership in Local 284. The allegations in the Complaint show that Plaintiffs' resignation notifications fell outside of the termination periods specified in the respective authorizations and, as provided in the agreements, dues deductions continued until one month before the "anniversary date" of their agreements. The agreements created financial obligations that lasted for a set period of time in the event that Plaintiffs chose to resign from the Union. Plaintiffs have not

9

demonstrated that such a contractual obligation is constitutionally impermissible. *See, e.g.*, *Bennet*, 991 F.3d at 730-33 (concluding that plaintiff did not suffer a violation of First Amendment rights, noting among other things that she agreed that a dues authorization would remain in effect for the duration of her employment unless validly revoked); *Loescher*, 2020 WL 912785, at *7 (neither *Janus* nor state contract law allows plaintiff to voluntarily enter into a dues authorization agreement with her union and then cancel outside of the opt-out period).

Finally, Plaintiffs argue that under *Janus*, Defendants were required to procure a special waiver of First Amendment rights. Again, the Court disagrees. As discussed above, *Janus* involved only the right of nonmembers not to be compelled to support the union. *Janus* did not create a new First Amendment waiver requirement for union members. *See Belgau*, 975 F.3d at 952 (explaining that *Janus* "in no way created a First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement"); *Hoekman*, 2021 WL 533683, at *8 ("Nor must the dues authorization agreement satisfy *Janus's* waiver requirements.").

This Court joins the numerous other courts to consider the issues presented here in concluding that *Janus* does not apply to situations where an employee chooses to join a union, authorizes dues deductions, receives union benefits not available to nonmembers, and later attempts to cancel deductions outside of the opt-out period in their agreements. Accordingly, the Court finds that Plaintiffs have failed to state a claim for a First Amendment violation and Counts One and Two are properly dismissed with prejudice.

### B. State-Law Claims

In Counts Three through Seven, Plaintiffs allege state-law claims. Subject matter jurisdiction over these claims exists only through the Court's exercise of supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). A district court may decline to exercise supplemental jurisdiction over state-law claims if it has dismissed all claims over which it had original jurisdiction. *See Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) (citing 28 U.S.C. § 1367(c)(3)); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (holding that a district court maintains discretion to either remand the state law claims or keep them in federal court).

While a federal district court may exercise supplemental jurisdiction, it should "exercise judicial restraint and avoid state law issues wherever possible." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). Typically, when federal claims are eliminated prior to trial, "the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *See Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7. When declining to exercise supplemental jurisdiction under § 1367(c), the Court can decide to dismiss the remaining claims without prejudice or remand those claims to state court. *St. John v. Int'l Ass'n of Machinists and Aerospace Workers*, 139 F.3d 1214, 1217 (8th Cir. 1998).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, which are based entirely on Minnesota state law. Accordingly, the Court dismisses Counts Three through Seven without prejudice. !

**ORDER**

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. [16]) is **GRANTED** as follows:

1. Counts One and Two of the Complaint (Doc. No. [1]) are **DISMISSED WITH PREJUDICE**.

2. Counts Three through Seven of the Complaint (Doc. No. [1]) are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 12, 2021                s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge